## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **PRISCILLA BRISTOL,** | § § § § | |
| *Plaintiff,* | § § § | |
| **v.** | § § § | **CIVIL ACTION NO.:** _____ |
| **ARK-LA-TEX FINANCIAL SERVICES, LLC D/B/A BENCHMARK MORTGAGE** | § § § § | |
| *Defendant.* | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Priscilla Bristol ("Plaintiff" or "Bristol"), complains of Defendant Ark-La-Tex Financial Services, LLC, a domestic limited liability company, (sometimes hereafter referred to as "Ark-La-Tex"). For causes of action Plaintiff shows the Court as follows:

## I.

## INTRODUCTION

1.01   Plaintiff would show the Court that Defendant wrongfully fired her from her job in violation of 42 U.S.C. § 1981 and Title VII on the basis of her sex (gender), and in retaliation for her protected activities.

## II.

## PARTIES

2.01   Priscilla Bristol is an individual who is a citizen of the State of Texas and is a resident of this judicial district in Texas.  Plaintiff can be contacted in care of her undersigned counsel.

2.02    Based upon information and belief, Defendant Ark-La-Tex Financial Services, LLC is a Texas domestic limited liability company, doing business in Texas at 5160 Tennyson Pkwy, Suite 1000, Plano, Texas 75024.  Defendant can be served with process by serving its registered agent Registered Agent Solutions, Inc., at Corporate Service Center One, 5301 Southwest Parkway, Suite 400, Austin, Texas 78735.

## III.

## JURISDICTION AND VENUE

3.01    Pursuant to 28 U.S.C. § 1331, jurisdiction is appropriate in the United States District Court for the Eastern District of Texas, as this action involves a question of the application of federal law, namely 42 U.S.C. § 1981, 42 U.S.C. 2000e et seq., and pendent and supplemental jurisdiction of the state law counts.

3.02    Venue for all causes of action stated herein lies in the Eastern District of Texas because the acts alleged in this Complaint took place, in whole or in part, within the boundaries of this District pursuant to 28 U.S.C. § 1391.3.03

3.03    Venue is proper as Plaintiff lives in this district, the events took place in this judicial district, and the Defendant does business in this judicial district.

## IV.

## FACTUAL ALLEGATIONS

4.01    Plaintiff began working at Defendant in 2017 as a Funding Specialist in the Post Closing department making a salary of $28.99 per hour.  Her supervisor was Jody Price, a white male.

4.02    Plaintiff caught on very quickly and was really good at her job. Plaintiff was always being asked to train new funders, and she did so without any extra title or compensation. Plaintiff was given formal reviews on a regular basis and always received high marks. These were given once or twice per year until 2022 when the employees' hours were cut. Reviews stopped and nothing was said about it. Presumably, Defendant halted the reviews because with good reviews came the expectation of some sort of increase in pay. Plaintiff never received any warnings. Despite her efforts and work ethic, Plaintiff was never promoted to Team Lead. That position was held by a white male who had been with the company a long time, but made no effort to improve or learn, and who still has a track record of making errors. Plaintiff was passed over for the funding manager position twice, and each time it was given to a white male.

4.03    Plaintiff made it known that she was interested in underwriting and that was her ultimate goal. Plaintiff obtained her NMLS license, and she took an underwriting boot camp course receiving a perfect score on the test. Mike Doncer, who was the VP over Plaintiff's department, tried to help her get into underwriting, but Plaintiff was shut down by Melissa Perritt, the underwriting manager, because she said that Plaintiff had to be a processor first, and would have to take a giant pay cut if Plaintiff wanted to move to processing.

4.04    Plaintiff couldn't afford a pay cut and she was offered a different position by Mike Doncer to become a purchase clearing specialist where Plaintiff could work remotely. Plaintiff's team lead, and later manager, was Rod Holland, a black male.

4.05    Plaintiff became pregnant for the first time in 2019. Her employer made an announcement to the company and gave her a baby gift.  Plaintiff worked until the day before she gave birth, and she took short-term disability leave afterward. Plaintiff had never had the benefit of maternity leave.

4.06    During this time, Plaintiff renewed her NMLS license and UW certification. Plaintiff continued to voice her desire to move into underwriting and be promoted. Plaintiff was passed over while other people with less experience were given the opportunity. For example, Lauren Mills NKA Lauren Sanchez, who is the daughter of the owner's assistant, was moved into processing and then into underwriting. She started working at Benchmark after Plaintiff did.  She started with zero mortgage experience, and she worked in the marketing department. She also didn't have any children and was not pregnant. Lindsey Gavin was also given the opportunity to move from processing into underwriting, and she was not pregnant nor did she have any children.

4.07    Plaintiff applied for a quality control underwriting position at Benchmark in April of 2023 with the support and recommendation of her VP, Mike Doncer.  Plaintiff never heard anything after applying. Later Plaintiff found out the position was filled.

4.08    Plaintiff became pregnant again in August of 2024.

4.09    In November or December of 2024, Plaintiff attended a Post-Closing meeting called by the owner of the company, Stewart Hunter. The tone of the meeting was alarming. Plaintiff felt like the message he was trying to get across without saying it expressly was that the employees should either leave the company on their own, ask about other opportunities within the company, or risk being let go. At the end of the meeting, he asked if anyone would like to say or ask anything. Plaintiff was the only person in the meeting who spoke up. Plaintiff told him that she had been trying to get into underwriting for years and had been turned down every time. Plaintiff asked if he thought that opportunity was ever going to be available to her. He gave Plaintiff an unclear answer, and the meeting ended. Plaintiff followed up with an email to his assistant expressing her interest in underwriting again as Stewart Hunter had instructed to do. Plaintiff received a phone call from John Kim, the new CFO. He told Plaintiff that she could be

"the poster child of the company." Nothing came from that conversation.

4.10    After that, Plaintiff had a phone call from HR, Traci Bell. Traci was unfriendly and aggressive. She told Plaintiff that she couldn't be an underwriter without being a processor first, and then she said Plaintiff couldn't be a processor because corporate processing was overstaffed. They had a remote corporate processing position listed on the corporate website, and it was still listed. When Plaintiff asked if anything else was available, she said she couldn't guess what Plaintiff would want, to which Plaintiff replied that she couldn't guess what you have unless it's listed on the website. Plaintiff asked about a compliance position that was listed online and she told Plaintiff that the only remote compliance position had already been filled by Molly Brotherson, and that she would let Plaintiff know if anything else was available. Molly Brotherson is the best friend of the owner's daughter, and she was a bartender before she came to work at Benchmark. She was on the shipping team, and she also lives local to the corporate office. Plaintiff was more qualified for the position, and further, Plaintiff is only eligible for positions that are remote since she lives hours from the corporate office. Molly also is not pregnant and has no children.

4.11    Plaintiff spoke to Benchmark employee Sheri McKim, a branch manager, about a possible opportunity at her office in Cedar Park. It was unclear what the position actually was and when it would be available. Plaintiff was talked down to, and nothing ever came out of that conversation.

4.12    Plaintiff worked until Friday, April 18, 2025 and she went into labor/delivered her baby on the following Monday, April 21, 2025.

4.13    While Plaintiff was at her newborn's doctor's appointment on May 9, 2025, Traci Bell, in HR, called Plaintiff to tell her that her job was being "dissolved," but that Plaintiff could

work until July 31, 2025.

4.14    Plaintiff was distraught, and they agreed to talk more about the details the following week. The next week when Plaintiff spoke with Traci Bell again, she didn't use the word "dissolve" when referring to Plaintiff's job. She told Plaintiff that Plaintiff's job and that of her teammates were being outsourced to a company overseas to "cut costs." She also said she and her team would be expected to "help with the transition," or in other words they were going to handle the workload while their replacements were trained. Plaintiff's teammates were both women over 40 with health issues.

4.15    Even though Plaintiff had been speaking up for months with Traci Bell about moving within the company, nothing was said about trying to move Plaintiff into another open position. Nothing was said about any other opportunities even though there were several corporate remote jobs listed on the website.

**V.**

**FIRST COUNT**

**VIOLATION OF THE EQUAL PAY ACT OF 1963, 29 U.S.C. § 206(d)**

5.01.    The foregoing paragraphs of this Complaint are incorporated in this count by reference as fully as if set forth at length herein.

5.02.    The Equal Pay Act, codified in 29 U.S. Code § 206(d) provides that:

**(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to—**

- (i) a seniority system;
- (ii) a merit system;
- (iii) a system which measures earnings by quantity or quality of production; or
- (iv) a differential based on any other factor other than sex:

Provided that an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

This law requires that men and women in the same workplace be given equal pay for equal work. The jobs need not be identical, but they must be substantially equal. It is enforced by the Equal Employment Opportunity Commission (EEOC).

5.03    Defendant has deprived Plaintiff of her right to fair wages and to "the full and equal benefit of all laws and proceedings" as is enjoyed by male citizens, in violation of the Equal Pay Act of 1963.

5.04    At all relevant times, Defendant was an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d), and the Equal Pay Act, 29 U.S.C. § 206(d).

5.05    Plaintiff was an employee of Defendant within the meaning of 29 U.S.C. § 203(e) and § 206(d) and engaged in commerce or in the production of goods for commerce or employed in an enterprise engaged in commerce or the production of goods for commerce.

5.06    During her employment with Defendant, Plaintiff performed work that was equal in skill, effort, and responsibility and was performed under similar working conditions to that of one or more male employees employed by Defendant in the same establishment.

5.07    Defendant paid Plaintiff lower wages than it paid to male employees for equal work on jobs requiring equal skill, effort, and responsibility, performed under similar working conditions.

5.08    The differential in pay between Plaintiff and her male comparators was not due to a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or any factor other than sex.

5.08    Defendant's conduct constitutes a violation of the Equal Pay Act, 29 U.S.C. § 206(d).

5.09    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, and other damages.

5.10    Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to recover the amount of the wage differential, an additional equal amount as liquidated damages, attorneys' fees, and costs of suit.

5.11    Defendant has engaged in a single, continuous course of conduct of discrimination against Plaintiff because of her sex/gender, and in retaliation, in order to destroy Plaintiff, her career, and her professional life.

5.12    Such discrimination by Defendant against Plaintiff was intentional and was a motivating factor in Defendant's conduct toward Plaintiff.  Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, overtime pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other nonpecuniary losses.  Further, this discrimination was done by Defendant with malice or with reckless indifference to Plaintiff's federally protected rights.  Plaintiff is therefore also entitled to recover punitive damages in a sum which is in excess of the minimum jurisdictional limit of this Court.  Plaintiff also seeks to recover all costs of Court, attorney's fees, and expert fees.

## VI.

### SECOND COUNT

### DISCRIMINATION, HARASSMENT, HOSTILE ENVIRONMENT AND RETALIATION BASED UPON SEX (GENDER) IN VIOLATION OF CHAPTER 21 OF THE TEXAS LABOR CODE

6.01.    The foregoing paragraphs of this Complaint are incorporated in this Count as fully as if set forth at length herein.

6.02.    Plaintiff was an employee within the meaning of The Texas Labor Code and belongs to a class protected under the Code, namely she is female.

6.03.    Defendant is an employer within the meaning of Chapter 21 of the Texas Labor code.

6.04.    Defendant intentionally discriminated against Plaintiff, caused her to be harassed, subjected her to a hostile environment and retaliated against her because of her gender, in violation of the Texas Labor Code including the harassment by upper management which Defendant failed to protect her from. Furthermore, Defendant retaliated against Plaintiff by terminating Plaintiff. Plaintiff was fired without good cause.

6.05.    All conditions precedent to filing this action for discrimination, harassment, hostile environment and retaliation under state law have been met.  Plaintiff timely filed her charge of discrimination and has received her Notice of Right to Sue within 90 days of filing this original action. (*See* **Exhibit A**).

6.06.    Defendant violated the Texas Labor Code by discharging Plaintiff and/or discriminating against Plaintiff with compensation, terms, conditions or privileges of employment because of Plaintiff's sex (gender) and pregnancy. Discrimination, harassment, and hostile environment were a motivating factor in Defendant's actions toward Plaintiff.  Defendant retaliated

against Plaintiff by firing her after she complained of discrimination, harassment and hostile environment.

6.07.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered significant financial losses, including the loss of her job and the loss of wages, salary and employment benefits.

6.08.   Such discrimination, harassment, hostile environment and retaliation by Defendant against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Further, this discrimination was done with malice or with reckless indifference to Plaintiff's federally protected rights. Plaintiff is therefore entitled to recover punitive damages.

6.09.   Plaintiff is entitled to an award of attorneys' fees and costs under Title VII as well as reimbursement of expert witness fees.

## VII.

### THIRD COUNT

### VIOLATION OF FMLA – 28 U.S.C 29 § 2615

7.01.   The foregoing paragraphs of this Complaint are incorporated in this Count as fully as if set forth at length herein.

7.02   Plaintiff was an eligible employee under the FMLA.   Plaintiff worked for Defendant for at least twelve (12) months and had worked at least 1,250 hours during the twelve (12) months prior to taking the leave.

7.03   Defendant was subject to the provisions of the FMLA. Defendant employed at least fifty (50) employees within a seventy-five (75) mile radius of Plaintiff's work site for twenty (20)

or more work weeks in the prior or current calendar year.

7.04    At the time of the discharge, Plaintiff was on maternity leave.

7.05    Defendant interfered with Plaintiff in the exercise of her FMLA rights by terminating her employment while she was on  FMLA leave.  Plaintiff made good faith efforts to submit all respective medical certifications for her FMLA leave.

7.06    The FMLA's interference provision makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," any substantive FMLA right. 29 U.S.C. § 2615(a)(1); *see also Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004); *Kauffman v. Fed. Express Corp*., 426 F.3d 880, 884 (7th Cir. 2005). Notably, a claim that an employee was terminated for taking FMLA leave is cognizable under *both* an interference or prescriptive claim under 29 U.S.C. §2615(a)(1), or under a retaliation or proscriptive claim under §2615(2).  *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 n.2 (6th Cir. Ohio 2007).

7.07    As a result of her wrongful termination, Plaintiff has suffered damages in the form of lost wages and benefits. Plaintiff is entitled to back pay, plus interest on that amount, to compensate her for that loss. 29 U.S.C § 2617(a)(1)(A)(i)-(ii).  Plaintiff is also entitled to front pay, for which Plaintiff sues.

7.08    The aforementioned acts were and are a willful violation of the FMLA, and entitle Plaintiff to recover damages as provided by 29 U.S.C. 2617, including liquidated damages. Plaintiff further seeks reinstatement to her position or a comparable position with reinstatement of benefits and seniority time.

7.09    As a result of Defendant's actions, Plaintiff has found it necessary to hire the services of the undersigned attorneys, for which Plaintiff seeks further relief.  29 U.S.C § 2617(a)(3).

## VIII.

## FOURTH COUNT

## TITLE VII SEX DISCRIMINATION (Disparate Treatment)

8.01.    The foregoing paragraphs of this Complaint are incorporated in this Count as fully as if set forth at length herein.

8.02    Defendant treated Plaintiff less favorably because she is a woman in violation of 42 U.S.C. § 2000e-2(a).

8.03    Plaintiff repeatedly passed over for promotion while white males were promoted instead.

8.04    Plaintiff trained employees and received excellent reviews but was never promoted to Team Lead.    Funding Manager positions were given to white males twice despite her performance.

## IX.

## FIFTH COUNT

## PREGNANCY DISCRIMINATION (PREGNANCY DISCRIMINATION ACT)

9.01.    The foregoing paragraphs of this Complaint are incorporated in this Count as fully as if set forth at length herein.

9.02    Defendant violated the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). Plaintiff became pregnant in 2019 and again in 2024.  Other employees who were not pregnant and had no children were moved into underwriting roles.

9.03    Shortly after giving birth in April 2025, Defendant informed Plaintiff that her job was being dissolved.

## X.

## JURY DEMAND

10.01 Plaintiff demands trial by jury on all issues raised by this Complaint.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have the following relief against Defendant:

1.    Judgment for back and front pay and all past and future lost benefits, including overtime pay;

2.    Judgment for actual damages in the amount of past and future lost earnings and benefits, and damages to past and future earnings capacity;

3.    Compensatory damages for the humiliation, damage to reputation, mental and emotional distress, and pain and suffering Plaintiff has experienced and endured as a result of the discriminatory actions of Defendant;

4.    The costs and expenses incurred by Plaintiff in seeking new employment;

5.    Damages for past and future mental anguish and emotional distress and damages to reputation;

6.    Exemplary damages in an amount determined by the trier of fact;

7.    Prejudgment and postjudgment interest at the maximum legal rate;

8.    Preliminary and permanent injunctive relief;

9.    Liquidated damages.

9.    Attorney's fees;

10.    Expert's fees;

11.    All costs of court; and

12.    Such other and further relief to which Plaintiff may be justly entitled.

Dated:  March 11, 2026

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By   *W. D. Masterson*
_____
W. D. Masterson
Texas State Bar No. 13184000
wdm@kilgorelaw.com
3141 Hood Street, Suite 500
Dallas, TX  75219
214-969-9099 - Telephone
214-953-0133 – Fax

**ATTORNEYS FOR PLAINTIFF
PRISCILLA BRISTOL**